**CHARLOTTE–MECKLENBURG HOSPITAL AUTHORITY,**
Appellee,

v.

**Lowell W. PERRY, Chairman of the Equal Employment Opportunity Commission and the Equal Employment Opportunity Commission, Appellant.**

**CHARLOTTE–MECKLENBURG HOSPITAL AUTHORITY,**
Appellant,

v.

**Lowell W. PERRY, Chairman of the Equal Employment Opportunity Commission and the Equal Employment Opportunity Commission, Appellee.**

Nos. 76–2272, 76–2273.

United States Court of Appeals,
Fourth Circuit.

Argued April 4, 1977.

Decided Jan. 26, 1978.

Vella M. Fink, Atty., E. E. O. C., Washington, D. C. (Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg, Asst. Gen. Counsel, E. E. O. C., Washington, D. C., on brief), for Lowell W. Perry and E. E. O. C.

John O. Pollard, Charlotte, N. C. (Blakeney, Alexander & Machen, Charlotte, N. C., on brief), for Charlotte-Mecklenburg Hospital Authority.

Before CLARK, Supreme Court Justice,* HAYNSWORTH, Chief Judge, and RUSSELL, Circuit Judge.

PER CURIAM:

Charlotte-Mecklenburg Hospital Authority (Hospital) brought this action against the Equal Employment Opportunity Commission (EEOC) pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552,[1] seeking to compel production of sworn statements taken by the EEOC from charg-

---

* Sitting by designation. Justice Clark participated in the decision of these cases but died before the opinion was prepared. 28 U.S.C. § 46(d).

1. 5 U.S.C. § 552 essentially provides that agencies shall release documents upon request of any person except as specifically exempted by 5 U.S.C. § 552(b).

ing parties in connection with employment discrimination charges against it. It, also, requested in its complaint an injunction against further proceedings by the EEOC until its application for relief under the FOIA was disposed of.

The facts giving rise to the action are as follows: In 1974, eight hospital employees, eight former employees and two employment applicants filed employment discrimination charges with the EEOC alleging that Charlotte Memorial Hospital discriminated against blacks in hiring, promotion, termination, job classifications and employment terms and conditions. Five employees later amended their charges to include allegations of retaliatory discharge. The representatives of the EEOC also procured from the charging parties statements under oath, supplementary of their charges, pursuant to EEOC's instructions, as set forth in its Compliance Manual.[2]

The EEOC gave the Hospital notice of the charges, including the names of the charging parties, the dates of the alleged violations and the general nature of the discriminatory charges. On May 1, 1975, the EEOC notified the Hospital that an investigation of the eighteen charges was to begin May 20, 1975. The Hospital thereupon wrote the investigator requesting copies of "the sworn statements [procured] from the charging parties which set forth the specifics of their claims." When the investigator failed to produce these "sworn statements," the Hospital denied the investigator permission to conduct an investigation and refused to allow him to enter its premises or to examine its employment files and records.

Denied access to the "sworn statements" of the charging parties, the Hospital proceeded to file with the EEOC a formal request pursuant to the FOIA for permission to examine and copy, insofar as perti-nent here, "[a]ny and all affidavits, statements or memoranda to [sic] file regarding interviews conducted by the Commission or its agents with regard to the above referenced charges or any other charges filed against Charlotte Memorial Hospital." A month later, the EEOC's General Counsel advised the Hospital in reply that some information would be made available, but that the affidavits taken from witnesses who were either a present or a past employee would be withheld as exempt from disclosure under the FOIA. The Hospital was also told in this letter of the General Counsel that, if it wished, it might appeal his denial of disclosure to the EEOC. It did appeal to the Commission but the EEOC affirmed the decision of its General Counsel, finding that the affidavits of past and present employees were exempt from disclosure under the FOIA by reason of exemptions 3, 5, 7(A), 7(D) and 7(E), which authorize the withholding of records which are exempt by statute or "which, in the Commission's opinion, could jeopardize conciliation efforts, which would disclose staff recommendations, and which would interfere with the Commission's investigative procedures and confidential sources." It concluded its decision with the statement that if the Hospital were "dissatisfied with the decision of the Commission * * * it [might] file a civil action in the district court of the United States * * *."

On October 14, 1975, the Hospital did file in the district court its complaint, seeking to compel production of the affidavits under the FOIA and to enjoin investigation of the charges, pending resolution of the FOIA dispute. The Hospital asserted that without the requested affidavits, it could not prepare and present a defense to the charges before the issuance of a reasonable cause determination.

---

**2.** This instruction as set forth in 1 EEOC Compliance Manual (1973 ed.) § 2.2(e) is as follows:

"(e) *Taking an Affidavit*—After the EEOC Form 5 has been completed, encourage the CP to make a more detailed statement of facts on EEOC Form 133, EEOC Affidavit, to serve as leads to the investigator. Names of potential witnesses, job titles, times, dates, sequence of events, and other items of information may be more readily recalled by CP at this time since most CPs visit a District Office shortly after the occurrence of the alleged discriminatory events."

The EEOC three days later countered with a subpoena *duces tecum* for the production of Hospital documents relevant to the eighteen initial charges as well as two further charges. Upon the Hospital's failure to comply with the subpoena, it in turn filed an enforcement action on March 10, 1976.

■ · On March 12, 1976, the EEOC moved for summary judgment in the Hospital's FOIA action, stating that the information sought was exempt from FOIA disclosure requirements under exemptions 3,[3] 7(A) and 7(D)[4] of the Act.[5] On June 21, 1976, the District Court, after consolidating the two actions, *i. e.*, the one by the Hospital for disclosure under the FOIA and the other by the EEOC to compel compliance with the subpoena *duces tecum*, denied the Hospital's request for preliminary injunctive relief and ordered it to comply with the subpoena, while postponing ruling on the summary judgment motion until the EEOC submitted the requested affidavits to the court *in camera*. After examining the affidavits, the district court issued its order, later revised, directing the EEOC to release the affidavits of twelve charging parties not then employed by the Hospital, stating that "there appears to be no reason" why the EEOC should not disclose these records. The Court also ordered the Hospital not to use or disclose the affidavits to any person except in connection with an investigation of the charges. The Court ruled the eight affidavits of current Hospital employees were not subject to disclosure under the FOIA as their release would have a "chilling effect" on the willingness of employees to make statements to the EEOC for fear of reprisal.

The EEOC has appealed from that part of the district court's order requiring disclosure of non-employee affidavits, while the Hospital has cross-appealed from the denial of production of employee affidavits.

We affirm.

It is the EEOC's thesis on its appeal that any sworn statements obtained by it from charging parties are specifically exempted from the disclosure mandated by the FOIA. For this premise, it relies on the exemptions spelt out (1) for matters "specifically exempted from disclosure by statute"[6] (exemption 3 of the Act) and (2) for "investigatory records compiled for law enforcement purposes"[7] (exemption 7 of the Act).

The District Court did not address specifically the first ground of objection raised by the EEOC based on exemption 3 of the FOIA, apparently finding it without merit. Whatever the circumstances under which it was dismissed below, the EEOC has renewed this claim of exemption on appeal and we shall consider it. In support of this claim, the EEOC relies on certain provisions of Title VII as providing a specific exemption from disclosure under exemption 3.[8] These provisions of Title VII command that "[c]harges [filed with the EEOC] shall not be made public by the Commission" and that "it shall be unlawful for any officer or employee of the Commission to make public * * * any information obtained by the Commission * * * prior to the institution of any proceeding * * *."[9] Such

---

**3.** Exemption 3, 5 U.S.C. § 552(b)(3) provides an exemption for materials "specifically exempted from disclosure by statute * * *."

**4.** Exemption 7, 5 U.S.C. § 552(b)(7)(A) provides in part an exemption for "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings * * * [and] (D) disclose the identity of a confidential source * * *."

**5.** The EEOC apparently abandoned any claim of immunity from disclosure based on exemption 5 of the FOIA because it is settled that such exemption does not protect "purely factual or investigatory reports," which covered the material sought by the Hospital through its action. *See, Soucie v. David* (1971) 145 U.S. App.D.C. 144, 154, 448 F.2d 1067, 1077.

**6.** 5 U.S.C. § 552(b)(3).

**7.** 5 U.S.C. § 552(b)(7).

**8.** *See* Connolly & Fox, *Employee Rights and Access to Documents Under the Freedom of Information Act*, 46 *Ford.L.R.* 203 at 237–240 (1977).

**9.** 42 U.S.C. § 2000e–5(b) and 8(e).

provisions, the EEOC argues, constitute specific exemptions from disclosure of "the information sought by the Hospital." The Hospital, on the other hand, points out that other provisions of Title VII impose an obligation on the Commission to give the party charged [which in this case would be the Hospital] notice of the charge filed, " * * * (including the date, place and circumstances of the alleged unlawful employment practice) * * *."[10] This provision of Title VII, it is reasoned by the Hospital, suggests a manifest distinction between, on the one hand, right of disclosure to the public generally, and, on the other hand, a right of disclosure to the parties themselves.[11] The Hospital argues that considering together these several provisions of Title VII—those proscribing publicity of charges filed and those requiring notice of the charges to the charged employer—and taking into consideration the purposes of the several sections, Title VII does not "specifically exempt from disclosure" either to the charging party or to the charged employer sworn statements obtained by the EEOC from the charging parties. That has been, it asserts, both the judicial and administrative construction of the Act and its prohibitions.[12]

█ The EEOC does not seriously dispute the Hospital's argument that disclosure to the parties—whether to the party charged or to the charging party—is not within the prohibitions of Title VII. But it contends that disclosure of such sworn statements, even to the parties, though not prohibited, is discretionary with the EEOC and that it has exercised that discretion in this case in determining to deny disclosure. This argument, though, far from supporting immunity from disclosure, actually is an argument for requiring disclosure. This follows because under the 1976 Amendments to the

FOIA, the third exemption is stated to be inapplicable to any statutory exemption for disclosure which depended upon the exercise of discretion by the government agency.[13] Accordingly, since the EEOC itself claims discretion to disclose or not in the context of this case, it is not entitled to exemption from disclosure under the terms of exemption 3, as amended. Of course, as the EEOC contends, this 1976 Amendment of exemption 3 was not effective at the time the district court entered its order. This, however, is not material. The purpose of the 1976 Amendments was not to change or alter the provisions of the FOIA; the intention of Congress in enacting the 1976 Amendments was simply to clarify what Congress had originally intended by the provisions of the FOIA. *See*, U.S.Code Cong. & Admin.News, 94th Congress, 2d Sess., p. 2224 (1976). That being true, exemption 3 should be construed in accordance with what Congress, by its 1976 Amendment, has declared to have been the original intention in enacting that exemption. So construed, disclosure in this case to the Hospital would not be "specifically exempt from disclosure" under the provisions of Title VII.

The EEOC says, though, that it does not follow simply from the fact Title VII fails to specifically prohibit disclosure to the Hospital that refusal to disclose is without the protection of this third exemption. The FOIA is, it argues, citing *NLRB v. Sears, Roebuck & Co.* (1975) 421 U.S. 132, at 143, n. 10, 95 S.Ct. 1504, 44 L.Ed.2d 29, a public disclosure statute "designed" to inform the public about agency action and not "to benefit private litigants" and under it, an interested party, such as the Hospital in this case, has no greater rights under the Act than any other member of the public[14] and

---

**10.** 42 U.S.C. § 2000e–5(b).

**11.** *See, EEOC v. St. Francis Community Hospital* (D.S.C.1976) 70 F.R.D. 592, 594, n. 4.

**12.** For a judicial construction to this effect, *see H. Kessler & Co. v. EEOC* (5th Cir. 1973) 472 F.2d 1147, *cert. denied* 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 398 (1973).

For an administrative ruling to the same effect, *see* 29 C.F.R. § 1601.20 (1976).

**13.** Public Law 94–409; 90 Stat. 1241. This amendment now appears in the current revision of 5 U.S.C. § 552(b)(3).

**14.** This argument finds its basis in the statutory language which obligates the governmental agency to "make * * * available to *the*

that the Hospital's special interest in the material sought neither increases nor diminishes its right to disclosure which must rest entirely on its right as a member of the public, or, as a recent case has phrased it, "anyone's case is as strong (or as weak) as anyone else's." *Robbins Tire & Rubber Co. v. NLRB* (5th Cir. 1977) 563 F.2d 724, 730. Accordingly, it posits that if a member of the general public could not secure disclosure, disclosure is never mandated under the FOIA. "FOIA is not a substitute for discovery and a party's asserted need for documents in connection with litigation will not affect, one way or the other, a determination of whether disclosure is warranted under FOIA." *Columbia Packing Co., Inc. v. U. S. Dept. of Agri.* (1st Cir. 1977) 563 F.2d 495, 499. But the Hospital contends that it does not ground its demand for disclosure on any special status which it may have because it is a target of charges filed with the EEOC by the parties whose affidavits it seeks. It asserts its right to disclosure under the FOIA as a member of the public. And, as a member of the public, it declares that it has what the court in *Kent Corp. v. N.L.R.B.* (5th Cir. 1976) 530 F.2d 612, at 617–618, *cert. denied* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287, stated to be a "prima facie right" to disclosure, a "prima facie right" which the EEOC can only defeat by establishing that disclosure is excused by a narrowly construed application of some specific exemption in the FOIA. And it contends that there is no specific exemption which, properly construed, will defeat its "prima facie right" to disclosure.

These conflicting arguments of the parties can only be resolved by looking to exemption 3 and particularly the other statute which the EEOC claims that by reason of exemption 3 prevents disclosure, and by giving to those statutes an interpretation which accords with the broad purposes of the FOIA. The position of the EEOC in this connection is that exemption 3 must be construed to mean that if the other statute relied on to support an exemption under 3, limits disclosure to any party, it constitutes under exemption 3 a prohibition against disclosure to any and all parties even though this other statute may not prohibit disclosure to some particular party or parties. The Hospital urges, however, that this argument conflicts with the oft-repeated rule that all exemptions are to be narrowly construed.[15] It adds that if exemption 3 is given the narrow construction required under this rule and one which will least militate against that broad disclosure Congress intended, then the prohibition against disclosure by some other statute as stated in exemption 3 must be restricted in application to a prohibition under some other statute which covers disclosure not simply to the public generally but also to the specific party demanding disclosure. Under this construction, Title VII, which is the other statute on which the EEOC relies as an excuse from disclosure under this third exemption, is not a statute prohibiting disclosure to the Hospital and will not, therefore, defeat the Hospital's "prima facie right" to disclosure, even though it may

*public*" the public records, subject to certain strictly delineated exemptions (italics added). The use of the term "the public" in the statute originated out of Congressional dissatisfaction with the narrow interpretation given the earlier disclosure statute, which required that disclosure was "only to be made available to 'persons properly and directly concerned' with the information." *EPA v. Mink* (1973), 410 U.S. 73 at 79, 93 S.Ct. 827 at 832, 35 L.Ed.2d 119 (discussing 5 U.S.C. § 1002 (1964 ed.) the earlier statute); *Robles v. Environmental Protection Agency* (4th Cir. 1973) 484 F.2d 843, 847.

**15.** Exemptions in the FOIA are to be "narrowly construed," with all doubts resolved in "favor-

ing disclosure," *see Dept. of Air Force v. Rose* (1976) 425 U.S. 352 at 360–361 and 366, 96 S.Ct. 1592, 48 L.Ed.2d 11. And in the absence of a clear showing of exemption, agency material is disclosable. *Columbia Packing Co., Inc. v. U. S. Dept. of Agri., supra,* 563 F.2d at 500, n. 3.

Of course, where an exemption, properly construed, is applicable and either justifies or commands nondisclosure, an order for disclosure will not be proper. *Westinghouse Electric Corp. v. Schlesinger* (4th Cir. 1976) 542 F.2d 1190, *cert. denied* 431 U.S. 924, 97 S.Ct. 2199, 53 L.Ed.2d 239.

prohibit disclosure to some other party.[16] We find this construction is consistent with the broad purposes of the Act.

In its second objection to disclosure, the EEOC claims that its investigatory records are exempt from disclosure under exemptions 7(A) and 7(D), at least, until its investigation is closed. In this phase of its argument, the EEOC contends that the affidavits demanded by the Hospital and disclosure of which was ordered, are not subject to disclosure because the investigation in connection with which such affidavits were taken is current or "open" investigation. EEOC supports this argument by drawing upon the analogy of decisions involving disclosure under the FOIA of investigatory records of the National Labor Relations Board. It asserts that, relying on a line of cases of which *Title Guarantee Co. v. N.L.R.B.* (2d Cir. 1976) 534 F.2d 484 is cited as the bellwether,[17] only records of a closed NLRB investigation, never the records of an open investigation, are subject to disclo-

sure under the FOIA. There are, however, as we noted in *Deering Milliken, Inc. v. Irving* (4th Cir. 1977) 548 F.2d 1131 at 1135, n. 6, authorities to the contrary which do not find the records of an open investigation *per se* nondisclosable.[18] The choice between the conflicting views reflected in these authorities turns on the proper construction of the 1974 Amendments of exemption 7.

The circumstances prompting the 1974 Amendments make clear their purpose. Congress was unquestionably dissatisfied with the broad application given exemption 7 of the original Act by the courts and with the niggardly way in which the courts were allowing disclosure of investigatory files. Despite the fact that the FOIA was designed to encourage disclosure, the courts had given an expansive interpretation of a number of the exemptions in the Act, including particularly exemption 7, under which statements procured in the course of the open investigation by an agency were

16. *See EEOC v. St. Francis Community Hospital, supra* at 594, where, in disposing of § 706(b) of Title VII as a bar to discovery, the Court said:

"To recognize the broad privilege claimed by the Commission herein where the terms of Section 706(b) do not clearly require it would frustrate the clear purposes of the discovery rules."

The same observation would apply with equal force to proceedings under the FOIA, where disclosure to the specific applicant was not intended to be applicable.

17. The author in the Note, *The Right to Disclosure of NLRB Documents under the Freedom of Information Act,* 5 *Ford.Urban L.J.* 119 at 123 (1976) states that there has been a "general acceptance of the Second Circuit's decision in *Title Guarantee Co. v. NLRB.*"

It is not clear just how far the Court intended to go in *Title Guarantee.* It is significant that it stated that it found it "unnecessary to make the broad determination that any investigative information obtained in connection with a pending enforcement proceeding is per se nondisclosable." 534 F.2d at 491. This language would suggest that the Court in *Title Guarantee* never stated that investigative information obtained in connection with an open investigation was never disclosable under the FOIA and citation of the case to that point is inaccurate. What *Title Guarantee* does seem to declare is simply that statements of present employees, procured in an open investigation under the

NLRB were not disclosable, a limitation which the District Court in this case recognized. *N.L.R.B. v. Hardeman Garment Corp.* (6th Cir. 1977) 557 F.2d 559, 561, however, construes *Title Guarantee* as holding that "all statements of employees obtained in connection with unfair labor practice proceedings pending before the NLRB are exempt from disclosure under § 552(b)(7)(A)." The same construction, limiting *Title Guarantee's* rule against nondisclosure to "statements * * * by employees or union representatives so long as those statements are relevant to a pending enforcement proceeding," was stated in *Abrahamson Chrysler-Plymouth, Inc. v. N.L.R.B.* (7th Cir. 1977) 561 F.2d 63, 64.

18. *Robbins Tire & Rubber Co. v. NLRB, supra; Harvey's Wagon Wheel, Inc. v. NLRB* (9th Cir. 1976) 550 F.2d 1139; *McDonnell Douglas Corp. v. NLRB* (C.D.Cal.1976) 92 LRRM 2072; *Temple-Eastex, Inc. v. NLRB* (E.D.Tex.1976) 410 F.Supp. 183.

In *Robbins,* the Court said that "the particular concern with closed files * * * (in the legislative debates during consideration of the 1974 Amendments) does not indicate to us a determination that disclosure of files in open cases, simply because they are open, would necessarily qualify as interference (with the investigation) under exemption 7(A). Cf., 45 *Geo.*Wash.L.Rev. 114, 124 (1976) * * *." 563 F.2d 728, n. 8.

*per se* nondisclosable, irrespective of the equities of the situation. Among the cases instanced in this regard is our own *Wellman Industries, Inc. v. NLRB* (4th Cir. 1974) 490 F.2d 427, 429–430. To correct this application of exemption 7 by the courts, the Congress in 1974 amended exemption 7 by providing that such exemption protected investigatory records from disclosure "only to the extent that the production of such records would (A) interfere with enforcement proceedings * * *" or "(D) disclose the identity of a confidential source * * *."[19] In order that the courts in applying such exemption might be provided with an adequate factual basis for determining whether disclosure would "interfere with enforcement proceedings," or disclose a "confidential source," Congress by the same Amendments gave the courts the right to make *in camera* inspections of all requested documents prior to ruling on disclosure under exemption 7.

It is manifest from this legislative history of the 1974 Amendments that Congress intended to proscribe the use of a mechanical test such as that enunciated in *Title Guarantee* in favor of "a case-by-case" factual inquiry in determining whether to require disclosure of investigatory records. Specifically, as has been aptly observed, there was in the legislative history nothing to support "the reliance * * * on the distinction between open and closed investigatory files."[20] Rather, the legislative record demonstrates, as the same commentator adds, that the "only factor" to be considered in connection with the disclosure of investigatory records, whether of an open or a closed investigation, "was whether the files would interfere with enforcement proceedings if released," or disclose a "confidential source;" and the author is unquestionably right in declaring that the rule adopted in *Title Guarantee* and followed in other cases "conflicts with the purpose of

the 1974 Amendments" and, if followed, "precludes the effective use of the *in camera* inspections, which are expressly permitted by the 1974 Amendments."[21]

██ In our opinion, the district court conformed in its decision to the procedure established by the 1974 Amendments. It examined *in camera* the affidavits obtained by the EEOC from the charging parties. Based on that *in camera* inspection, it concluded that the statements procured from all present employees of the Hospital should not be disclosed because such disclosure might interfere with the EEOC investigation but that the disclosure of the statements procured from former employees would not interfere or disclose confidential sources. It accordingly denied the disclosure of the statements of present employees and ordered the disclosure of those of former employees. In our opinion the court did not abuse its discretion in the selection of the records to be disclosed. *See Columbia Packing Co., Inc. v. U. S. Dept. of Agri. supra,* 563 F.2d at 500.

██ We find no error in the order for disclosure of the statements of former employees or to the court's finding that such disclosure would not interfere with the EEOC investigation. That finding was based on an *in camera* examination of the affidavits themselves. The EEOC does not argue that the district court's finding, after such review, that disclosure would not have a chilling effect on present employees or would not interfere with the investigation is erroneous; it contends rather for a strict *per se* rule of nondisclosure, which the 1974 Amendments clearly proscribed and for which there is, in our opinion, no warrant. Indeed, the grant of a right to *in camera* review can only relate to open investigation, since obviously there can be no interference arising out of disclosure if the investigation is closed.

---

19. There were other conditions stated but we are concerned only with "(A)" since the claim of the EEOC for exemption is based on the claim that disclosure would "interfere with enforcement proceedings."

20. Note, *The Impact of the FOIA on NLRB Discovery Procedures,* 10 *Mich. J. of L.Reform,* 476 at 493 (1977).

21. *Ibid.* at 493.

The refusal to order disclosure of the sworn statements of present employees, however, is vigorously assailed by the Hospital. In refusing such disclosure, the district court rested its conclusion on the finding that by such disclosure "the policy of the freedom of information act [would] not be served * * * at this stage of the proceedings" because the disclosure "would have a chilling effect upon the willingness of employees to make such statements." To this, the Hospital replies that, under Title VII, the EEOC is obligated to provide the employer with the name of the charging party and a statement of his charges and this obligation relates equally to present and past employees. Because of this, it argues that disclosure of the sworn statements of present employees, taken in support of the charge and as an investigatory lead for the EEOC, could not have any chilling effect. It must be borne in mind, however, that the district judge reviewed *in camera* the sworn statements and on the basis of that examination he concluded that disclosure of such statements would "impede the investigation proceedings. It could well be that the disclosure of the sworn statements themselves, as distinguished from the language of the charges themselves, might be regarded as prejudicial to the investigation and might be deemed to have a chilling effect upon the charging parties. Apparently the district court, after reviewing *in camera* the sworn statements of the complaining parties, given in addition to the formal charges, concluded that such was the case in connection with the affidavits of present employees of the Hospital. Neither party has taken steps to present the affidavits in question for our *in camera* inspection and, under such circumstances we cannot say the findings of the district court, made on the basis of this *in camera* review, are clearly erroneous.

The judgment of the district court is accordingly

*AFFIRMED.*